IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TOMMY FITZGERALD HAMILTON                                                                       PLAINTIFF

v.                                         Civil No. 4:19-cv-04135

OFFICER JUSTIN DEAN, Police Officer, Hope,
Arkansas Police Department; and CORPORAL
SCOTT HURD                                                                                      DEFENDANTS

**REPORT AND RECOMMENDATION**

    This is a civil rights action filed *pro se* by Plaintiff, Tommy Fitzgerald Hamilton, under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 23). Plaintiff filed a Response (ECF Nos. 28, 29) and Defendants filed a Reply. (ECF No. 30). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I. FACTUAL BACKROUND**

    Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC"), Ouachita River Unit. His claims in this action arise from alleged incidents that occurred during his arrest in 2018 in Hope, Arkansas.

    On July 18, 2018, at approximately 12:18 a.m., Sergeant Jennifer Ghormley,[1] an officer with the Hope Police Department, saw Plaintiff drive into the parking lot of a local convenience store. (ECF No. 23-1, p. 1). Sergeant Ghormley knew Plaintiff's driver's license was suspended because she had previously arrested him for his sixth charge of driving on a suspended license. *Id.*

---

[1] Sergeant Ghormley is not a named defendant in this lawsuit.

1

Ghormley approached Plaintiff, gave him a warning, and told him he needed to have someone pick him up because he was driving on a suspended license. *Id.,* (ECF No. 23-3).[2] Plaintiff informed Ghormley he would have someone pick him up and he then went inside the store. *Id.,* (ECF No. 23-2). Sergeant Ghormley parked her patrol vehicle in the parking lot across the street from the convenience store and confirmed Plaintiff's license was suspended using her vehicle's mobile data terminal. (ECF Nos. 23-1, 23-2). Shortly thereafter Sergeant Ghormley observed Plaintiff exit the store, get into the driver's seat of his vehicle, and drive out of the parking lot. (ECF Nos. 23-1, p. 2).

At the time of Plaintiff's arrest, Sergeant Ghormley was utilizing her officer body camera. (ECF No. 23-3, video filed conventionally with the Court). The video footage shows Sergeant Ghormley pulling out of the parking lot, getting behind Plaintiff's vehicle, and activating her emergency lights and sirens to conduct a traffic stop. *Id.,* (ECF No. 23-3). She followed Plaintiff with the police car's sirens and lights blaring for approximately a minute and a half until Plaintiff stopped in front of his residence. *Id.* Plaintiff then got out of his vehicle and Sergeant Ghormley handcuffed and placed Plaintiff under arrest for fleeing in a vehicle and driving on a suspended driver's license. *Id.* Plaintiff argued with her stating he thought a firetruck was behind him and claimed he did not know she was attempting to pull him over for a traffic stop. *Id.*

Defendants Dean and Hurd, police officers employed by the Hope Police Department, arrived to assist Sergeant Ghormley. (ECF Nos. 23-1, 23-3, 23-4, 23-5). While Sergeant Ghormley was arranging who would transport Plaintiff to jail, he became combative, noncompliant, and verbally aggressive. *Id.* Sergeant Ghormley and Defendant Dean grabbed

---

[2] Exhibit 23-3 is the Body Camera Footage of Sergeant Ghormley.

Plaintiff's arms and began walking him toward the patrol vehicle. (ECF No. 23-1, 23-3, 23-4). Defendant Dean told Plaintiff to walk and Plaintiff told him he could not tell him what to do. Plaintiff then kept stopping and pulling away and continued yelling at Defendants to "take me down come on". *Id.*

Defendant Hurd took Sergeant Ghormley's place and he and Defendant Dean escorted Plaintiff to the vehicle using a field escort. (ECF Nos. 23-1, 23-3, 23-4, 23-5). Defendants put their arms through Plaintiff's arms and placed their hands on his shoulders to walk him to the vehicle. One of the Defendants can be heard asking Plaintiff to "hold still". *Id.* Plaintiff continued to fight against them and push his arms down while Defendants were trying to get him to the vehicle. (ECF Nos. 23-3, 23-4, 23-5). Once they got to the patrol vehicle, Plaintiff complained about the handcuffs hurting him. (ECF Nos. 23-3, 23-4 p. 2). Defendant Dean then looked at the handcuffs, noticed they were loose, and that Plaintiff was turning his hands into the cuffs. (ECF No. 23-4, p. 2). Defendant Dean then repositioned Plaintiff's hands and tightened the handcuffs. *Id.*

After Plaintiff arrived at the Hempstead County Detention Center, he complained of a migraine and asked for medical treatment. He was then taken to Wadley Regional Medical Center and Sergeant Ghormley met him there. (ECF No. 23-1). Plaintiff refused the medical treatment offered at the hospital and Sergeant Ghormley transported him back to the Hempstead County Detention Facility. *Id.* Sergeant Ghormley then noticed a scratch on Plaintiff's left hand, took a photograph of it, and attached the photo to her incident report. (ECF No. 23-6). At no time did Plaintiff complain of any pain or injuries to his hands, wrists, arms, or head.

## II. PROCEDURAL BACKGROUND

On October 16, 2019, Plaintiff filed the instant lawsuit against Defendant Dean and

3

"unknown officers". (ECF No. 1). The "unknown officer" was later identified as Defendant Hurd. (ECF No. 12). Plaintiff alleges Defendants used excessive force against him during his arrest on July 18, 2018. He describes him claim against Defendants as follows:

> why handcuff with arms behind my back Mr Justin Dean grab my arm and push them up in the air over my head as he done this I ask him not to cause the cuff was cutting into my arm he carry on and I had to pull them down when I did he thow me up against the truck then him and Mr. NA done it all over again again I had to pull my arm down then I thow again

(ECF No. 1, p. 4). Although Plaintiff indicates he is also asserting an official capacity claim against Defendants, he does not provide any description of that claim. *Id.* at pp. 5, 6. Plaintiff is seeking compensatory and punitive damages. *Id.* at p. 7.

On September 2, 2020, Defendants filed a Motion for Summary Judgment and Brief in Support arguing they are entitled to summary judgment because: 1) any force used by Defendants Dean and Hurd was reasonable within the meaning of the Fourth Amendment; 2) Defendants are entitled to qualified immunity; and 3) Plaintiff has not produced any evidence of a policy, custom or practice of the City of Hope, Arkansas that violated Plaintiff rights. (ECF Nos. 23, 24).

On September 30, 2020, Plaintiff filed a Response in opposition to Defendants' motion along with a Response to Defendants' Statement of Facts. (ECF Nos. 28, 29). Plaintiff submitted an affidavit stating:

> Defendant Dean "came over and grab my arm as I speak to Sgt. Ghormley…the cuffs started hurting my arm (hands), and I noited that Officer dean was pushin upper on my arm, by holding were the cuffs lock on my arm, I ask would he not do that cause it was hurting my arm (hand)…I pull my arm back down and Cpl. Dean throw me against a car. Short time Cpl. Dean and Cpl. Hurd both put there arms under my arm and their hands on my shoulder pushing my arm up and body down like…once to the trainported car (truck) Cpl. Dean throw me up in the truck, by so hitting my back and head against the truck…"

(ECF No. 28-1, pp. 2-3). Plaintiff goes on to state "I got to Hempstead Co. Jail I became short of

4

breath and light headed." *Id.* at p. 3. Plaintiff acknowledges he was transported to Wadley Regional Medical Center where he was "offer a shot, and I refused the shot asking for a pill if I had to take something. I was told a shot or nothing." *Id.*

On October 6, 2020, Defendants filed a Reply arguing: 1) the body camera footage proves what actually occurred and the Court should view the facts in the light depicted by the videotape; 2) Plaintiff includes an additional allegation in his Response which is not in his Complaint that Defendant Dean picked him up and threw him in the truck causing him to hit his back and head; 3) Defendants did not use more force than necessary to arrest Plaintiff and escort him to the patrol vehicle; 4) Plaintiff failed to meet his burden of providing sufficient evidence to defeat both prongs of qualified immunity; and 5) Plaintiff failed to address Defendants' argument regarding the lack of evidence of an official capacity claim against the City of Hope. (ECF No. 30).

### III.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.  DISCUSSION

### A.  Excessive Force

Plaintiff alleges Defendants Dean and Hurd used excessive force against him during his arrest on July 18, 2018, when they grabbed his arms, held him where the cuffs "lock on my arm" and threw him up "against the truck".[3]

Where an excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).  The application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

---

[3]In his affidavit supporting his Response, Plaintiff claims – for the first time – that Defendant Dean picked him up and threw him in the truck, causing him to hit his back and head.  (ECF No. 28-1, p. 3).  The Court notes this allegation is not properly before the Court as Plaintiff did not include this in his Complaint.  (ECF No. 1).

others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. "The calculous of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

Prior to the Eighth Circuit's opinion in *Chambers v. Pennycook,* 641 F.3d 898 (8th Cir. 2011), it had been an "open question in this circuit whether an excessive force claim requires some minimum level of injury." *Id.* at 904. In *Chambers,* the Eighth Circuit held "evidence of only *de minimis* injury" does not "necessarily foreclose[ ] a claim of excessive force under the Fourth Amendment." *Id.* at 906. Rather, "[t]he appropriate inquiry is 'whether the force used to effect a particular seizure is 'reasonable.'" *Id.* The court reasoned "it is logically possible to prove an excessive use of force" can still "cause only a minor injury," and such claims should not be foreclosed based solely on the extent of the injury suffered. *Id.*

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir. 1990), (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d. Cir. 1973). In order to conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during an arrest does not *ipso facto* establish a Fourth-Amendment violation. *Crumley v. City of St. Paul,* 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized…the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

"Handcuffing inevitably involves some use of force," *Wertish v. Krueger,* 433 F.3d 1062, 1067 (8th Cir. 2006), and it will almost always result in some irritation, minor injury, or discomfort

7

where the handcuffs are applied.  *See Chambers,* 641 F.3d 898, 907 citing *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002).  Courts have found the application of handcuffs, even when tightly secured, is not an unreasonable use of force.  *See Crumley,* 324 F.3d at 1008; *Foster,* 914 F.2d at 1082.

Here, the body camera footage speaks for itself.  It simply does not support Plaintiff's version of events.  Plaintiff is combative, verbally aggressive and argumentative during the entire encounter – especially when Defendants Dean and Hurd begin to escort him to the police vehicle. He not only taunts Defendants by yelling "take me down, come on", he also continues to move and twist and resist the Defendants as they escort him to the vehicle even after being asked to "hold still".  The video footage clearly shows Defendants putting their arms through Plaintiff's arms and placing their hands on his shoulders to walk him to the vehicle.  It does not show Defendants pulling Plaintiff's arms over his head while he was handcuffed as Plaintiff alleges nor does it show Plaintiff being thrown up against any vehicle.   (ECF Nos. 23-3, 23-4, 23-5).

The Court finds no reasonable jury could find that Defendants' response to Plaintiff's actions was an excessive use of force under the "objective reasonableness" test.   Under these circumstances, the limited use of force during Plaintiff's arrest was reasonable and justified. Accordingly, I recommend Defendants' summary judgment motion be granted and his claims for excessive force be dismissed.

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities.  Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Official capacity claims are "functionally equivalent to a suit against the

employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Dean and Hurd who are employed as police officers with the Hope Police Department are treated as claims against the City of Hope, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of the City of Hope, Arkansas under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has not alleged or described any policy, practice, or custom of the City of Hope, Arkansas that contributed to a violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law. *Id.* [4]

## V. CONCLUSION

For the reasons stated above, I recommend Defendants Dean and Hurd's Motion for Summary Judgment (ECF No. 23) be **GRANTED** and all individual and official capacity claims against Defendants be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

---

[4] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

   **DATED this 18th day of November 2020.**

          */s/ Barry A. Bryant*
          HON. BARRY A. BRYANT
          UNITED STATES MAGISTRATE JUDGE